# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

August 9, 2021

LETTER TO COUNSEL

RE:     *Melissa B. v. Saul*
        Civil No. DLB-20-1231

Dear Counsel:

On May 15, 2020, plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. ECF 1. I have considered the parties' cross-motions for summary judgment and plaintiff's response. Pl.'s Mem., ECF 15; Def.'s Mem., ECF 16; Pl.'s Reply, ECF 17. I find no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the denial if the SSA employed correct legal standards and made findings supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision in part to the extent of the denial of plaintiff's SSI claim, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Plaintiff filed her claims for benefits on October 2, 2015,[1] alleging an onset date of October 1, 2009. Administrative Transcript ("Tr.") 14. The SSA denied her claims initially and on reconsideration. Tr. 141–48, 156–57. An Administrative Law Judge ("ALJ") held a hearing on October 18, 2018. Tr. 32–81. Following the hearing, the ALJ: (1) dismissed plaintiff's request for hearing as to her DIB claim because he found that *res judicata* barred the claim, her date last insured being December 31, 2012, and a previous denial of a DIB claim having already been rendered on March 6, 2015; and (2) found that, with respect to plaintiff's SSI claim, plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 14–25. Because the Appeals Council denied plaintiff's request for review, Tr. 1–7, the ALJ's decision constitutes the final, reviewable decision of the SSA. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 20 C.F.R. § 422.210(a).

---

[1] Plaintiff's applications for benefits are dated November 4, 2015, in the Administrative Transcript's index. *See also* Tr. 229–32, 233–41. Because the exact date—as between October 2, 2015, and November 4, 2015—is immaterial to the resolution of plaintiff's claim, the Court assumes that plaintiff's application date is October 2, 2015, as the ALJ wrote in his decision. *See* Tr. 14.

*Melissa B. v. Kijakazi*
Civil No. DLB-20-1231
August 9, 2021
Page 2

First, although plaintiff argues on the merits of her DIB claim, she does not advance any arguments as to the ALJ's dismissal of her DIB-claim hearing request. *See* Pl.'s Mem.; Pl.'s Reply. Accordingly, the ALJ's dismissal of plaintiff's hearing request as to her DIB claim is affirmed.

Second, as to plaintiff's SSI claim, the ALJ found plaintiff severely impaired by "osteoarthritis, depression/bipolar disorder, and anxiety." Tr. 17. Despite these impairments, the ALJ determined plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b), except [she] is limited to occasional stooping and squatting, and no climbing of ladders, ropes[,] or scaffolds. She is limited to no frequent pulling or pushing with the lower extremities. She is limited to simple, repetitive, non-production job tasks in a low stress environment that require no more than occasional interaction with co-workers.

Tr. 19. After considering the testimony of a vocational expert ("VE"), the ALJ determined plaintiff could perform her past relevant work as a housekeeper. Tr. 23. The ALJ also alternatively concluded plaintiff could perform other jobs existing in significant numbers in the national economy. Tr. 24–25. Therefore, the ALJ concluded plaintiff was not disabled. Tr. 25.

On appeal, plaintiff argues: (1) the ALJ's decision fails to comply with the requirements of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); and (2) the Court is unable to determine whether substantial evidence supports the ALJ's decision because the ALJ used an ambiguous term in the RFC determination and hypothetical to the VE, *see Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019). Pl.'s Mem. 9–27. I agree that the ALJ's decision does not comply with *Mascio*'s mandate. Accordingly, I remand with respect to plaintiff's SSI claim, but I express no opinion as to plaintiff's ultimate entitlement to benefits.

In *Mascio*, the Fourth Circuit remanded for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of the plaintiff's "moderate" difficulties in concentration, persistence, or pace ("CPP"). 780 F.3d at 638. The ability to concentrate, persist, or maintain pace reflects one of four broad functional areas an ALJ must consider when evaluating a claimant's mental impairments.[2] 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)(2)(b); *see* 20 C.F.R. § 416.920a (explaining the "special technique" for evaluating the severity of a claimant's mental impairments). The ALJ assigns a rating based on the extent to which the claimant's impairment "interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.920a(b), (c)(2). The ALJ rates a claimant's degree of limitation in each area using a five-point scale: none, mild, moderate, marked, or extreme. *Id.* § 416.920a(c)(4). A moderate limitation signifies that the claimant has only a fair ability to function in the relevant area. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(c).

---

[1] The other three areas are: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; and (3) the ability to adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)(2)(b) (the "paragraph B" criteria).

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the ALJ's determination that the claimant had moderate difficulties in maintaining CPP at step three.  780 F.3d at 637–38.  The Fourth Circuit specifically held that an "ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work."  *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted).  In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."  *Id.*  Although the Fourth Circuit noted the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in CPP did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary.  *Id.*

In this case, the ALJ found plaintiff moderately limited in CPP.  Tr. 19.  The ALJ found plaintiff's RFC limited to, as pertinent here, "simple, repetitive, non-production job tasks in a low stress environment that require no more than occasional interaction with coworkers."  Tr. 19.  Plaintiff argues these combined findings amount to reversible error under *Mascio*.  Pl.'s Mem. 16–27; Pl.'s Reply 4–7.  The Commissioner attempts to distinguish this case from *Mascio* and argues that "the ALJ considered the full record and noted that Ms. Byrd's activities were not consistent with her allegations."  Def.'s Mem. 8–10.  I disagree with the Commissioner and accordingly remand.

After a review of the record, the ALJ found that plaintiff was moderately limited in CPP.  Tr. 19.  In making this finding, the ALJ discussed plaintiff's capabilities:

> [Plaintiff] shops in stores for food, house items, and clothes.  [She] reads and watches television.  She follows written instructions "okay."  Her ability to follow spoken instructions depends on how long the speaker talks.  She does not pay attention long due to racing thoughts.  She does not handle stress well.  Her ability to handle stress depends on the change.

Tr. 19 (internal citations omitted).  Having found that plaintiff was moderately limited in CPP, the ALJ was required to either include a coordinate limitation in plaintiff's RFC or explain how plaintiff's moderate limitation did not impact her ability to work.  *Mascio*, 780 F.3d at 638.

*Mascio* makes clear that an ALJ does not summarily account for a moderate CPP limitation by limiting a claimant to simple, repetitive tasks.  *See* Tr. 19 (limiting plaintiff to "simple, repetitive . . . tasks").  The ALJ did not explain in his decision how, on these specific facts, a limitation to simple, repetitive tasks accounted for plaintiff's moderate CPP limitation.  *See Shinaberry v. Saul*, 952 F.3d 113, 121–22 (4th Cir. 2020) (finding that an ALJ adequately explained how a limitation to simple, routine, repetitive tasks accounted for a plaintiff's moderate CPP limitation where: (1) the plaintiff had a lifelong, borderline intellectual disability, which caused her CPP limitation, but

*Melissa B. v. Kijakazi*
Civil No. DLB-20-1231
August 9, 2021
Page 4

had worked for decades in jobs requiring only such tasks; and (2) medical evaluators opined that the plaintiff could maintain CPP with respect to such tasks);[3] Tr. 19–23. Rather, the ALJ offered his reasoning only by means of a conclusion, writing that he "considered . . . *Mascio* . . . with regards to a finding of moderation limitations in [CPP] and its potential impact on the ability to remain on task by limiting [plaintiff] to simple[,] repetitive[,] non-production job tasks in a low stress environment." Tr. 22. Although this sentence makes the ALJ's conclusion clear, it provides no explanation as to how plaintiff could be expected to maintain CPP under these conditions. *See Mascio*, 780 F.3d at 638.

The Commissioner also argues that the ALJ's RFC limitations to "non-production job tasks" and "a low stress environment" accounted for plaintiff's moderate CPP limitation. Def.'s Mem. 9. This argument is unconvincing. First, the ALJ provided no explanation as to how those limitations would account for plaintiff's moderate CPP limitation. *See* Tr. 19–23. Second and as to "non-production job tasks," a two-part analysis is required: (1) is the term reviewable under *Thomas*, 916 F.3d at 312, and (2) does it account for plaintiff's moderate limitations in CPP? In *Thomas*, the Fourth Circuit held an ALJ's RFC assessment limiting the plaintiff to work not "requiring a production rate or demand pace" precluded review because the Court lacked "enough information to understand what those terms mean[t]." 916 F.3d at 312. Expressing no opinion as to whether the RFC findings were correct, the Court remanded for "a clearer window into" the ALJ's reasoning. *Id.* at n.5 ("Without further explanation, we simply cannot tell whether the RFC finding…properly accounts for [the plaintiff's] moderate limitations in concentration, persistence, or pace. On remand, the ALJ will need to establish for how long, and under what conditions, [the plaintiff] is able to focus…and stay on task at a sustained rate.").

The Commissioner persuasively argues that the term "non-production job tasks" is distinct from the unreviewable, ambiguous term in *Thomas* because "non-production job tasks" refers to a type of work rather than an ambiguous pace. *See Thomas*, 916 F.3d at 312. However, a term that refers to a type of work, such as "non-production job tasks," does not necessarily address plaintiff's CPP limitation because the term does not reflect any pace limitations. Other jobs outside the production industry may require a fast pace. Indeed, the substance of this very issue undergirds the concern in *Thomas*: what exactly is a production-rate pace, and to which occupations does that pace extend? Further, the ALJ provided no explanation as to what this limitation entailed and how it accounted for plaintiff's moderate CPP limitation despite relating only to one line of work. *See* Tr. 19–23. Thus, I disagree with the Commissioner that this term cures the *Mascio* error in this case.

---

[3] Further, the record in this case does not support an affirmance under *Shinaberry*. In this case, the first psychological consultant did not opine on plaintiff's CPP capabilities because plaintiff submitted insufficient evidence of her psychological impairments. On reconsideration, the psychological consultant found plaintiff moderately limited in CPP. Tr. 121, 134. Specifically, the consultant found moderate limitations in plaintiff's ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, complete a normal workday or workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 120–21, 134–35. The consultant explained that plaintiff "has issues with task persistence due to mood symptoms." Tr. 121, 135. Nowhere does that consultant suggest that plaintiff could maintain CPP when limited to simple tasks or when working on tasks other than those found in production occupations. *See* Tr. 120–21.

*Melissa B. v. Kijakazi*
Civil No. DLB-20-1231
August 9, 2021
Page 5

As to the limitation to work in "a low stress environment," the Commissioner does not identify anywhere in the ALJ's decision where the ALJ explained how this limitation would account for a moderate CPP limitation. Plaintiff argues that this limitation addresses plaintiff's adaptive limitations. While I do not hold that a component of an RFC determination cannot account for more than one of a plaintiff's functional limitations, in this case the Commissioner has advanced no more than a threadbare argument that the ALJ used this term to account for plaintiff's moderate CPP limitation. Further, the ALJ did not explain how this limitation addresses plaintiff's moderate CPP limitation. *See* Tr. 19–23. Accordingly, I find that the ALJ did not comply with *Mascio*'s requirements by virtue of his RFC determination that limited plaintiff to work in "a low stress environment."

The Commissioner also argues that the ALJ explained his RFC determination by discussing plaintiff's treatment history, activities of daily living, and work activity. Def.'s Mem. 8–10. However, the ALJ himself concluded after a review of the record that plaintiff is moderately limited in CPP. Tr. 19. The ALJ's later citation of evidence that suggested plaintiff's CPP limitations were something less than moderate makes the ALJ's findings, at the bare minimum, internally inconsistent. Phrased differently, the ALJ does not cite evidence in the record in arguing that plaintiff's moderate CPP limitation does not translate to a CPP limitation in a certain work setting. The ALJ here generally cites evidence in the record and contradicts his previous finding that plaintiff experienced a CPP limitation at all. "Without further explanation, I am unable to ascertain whether the ALJ truly believed [plaintiff] to have moderate difficulties in [CPP], instead of mild, or no difficulties, and how those difficulties restrict her RFC." *See Brocato v. Cmm'r, Soc. Sec. Admin.*, No. SAG-16-2540, 2017 WL 3084382, at *2 (D. Md. July 19, 2017).

Finally, because I remand for the ALJ's failure to explain the RFC determination with respect to plaintiff's moderate CPP limitation, I decline to reach plaintiff's other argument. The ALJ may consider this issue on remand.

For the reasons set forth herein, plaintiff's motion for summary judgment, ECF 15, is denied, and the Commissioner's motion for summary judgment, ECF 16, is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment with respect to plaintiff's SSI claim is reversed in part due to inadequate analysis. The case is remanded for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

Sincerely yours,

/s/

Deborah L. Boardman
United States District Judge